IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Sylvester Singletary,              )    Case No. 8:13-CV-0804-RBH-JDA
                                   )
          Petitioner,              )
                                   )
     v.                            )    **REPORT AND RECOMMENDATION**
                                   )    **OF MAGISTRATE JUDGE**
Joseph McFadden, Warden,           )
                                   )
          Respondent.              )
_____)

This matter is before the Court on Respondent's motion for summary judgment [Doc. 35], supplemental motion for summary judgment [Doc. 48], and Petitioner's motion to expand the record [Doc. 58]. Petitioner, proceeding with the assistance of counsel, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed a pro se Petition for writ of habeas corpus on March 20, 2013.[1] [Doc. 1.] On July 1, 2013, the Court appointed Petitioner counsel because Petitioner alleged he is mentally disabled and illiterate. [Doc. 27.] On July 23, 2013, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 35, 36.] On August 1, 2013, the Court granted Petitioner's motion to amend his habeas petition [Doc. 40.] Petitioner filed his amended petition on September 3, 2013 [Doc. 46], and thereafter,

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on March 20, 2013 [Doc. 1-3 (envelope stamped as received by prison mailroom on March 20, 2013).]

Respondent filed his supplemental motion for summary judgment, addressing Petitioner's two new claims. [Docs. 48, 49.] Petitioner filed his response, via counsel, on October 21, 2013. [Doc. 56.] Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND[2]

Petitioner is incarcerated in the Lieber Correctional Institution of the South Carolina Department of Corrections, pursuant to orders of commitment of the Clerk of Court for Horry County. [Doc. 49 at 1.] Petitioner was indicted in August 2005 for two counts of assault on a police officer while resisting arrest, resisting arrest, kidnaping, and criminal domestic violence of a high and aggravated nature. [*Id*.] In March 2006, a grand jury indicted Petitioner for assault and battery with intent to kill, and in June of 2006, Petitioner was indicted for burglary in the first degree and assault with intent to commit criminal sexual conduct. [*Id*. at 1–2.] Petitioner proceeded to trial, represented by J. Eric Fox ("Fox"), and was found guilty of resisting arrest, kidnaping, criminal domestic violence of a high and aggravated nature, burglary in the first degree, and assault and battery of a high and aggravated nature. [*Id.* at 2.] Petitioner was acquitted of the assault with intent to commit criminal sexual conduct and assault on a police officer while resisting arrest charges. [*Id.*] Judge Stephen H. John sentenced Petitioner to twenty-two years for the burglary and kidnaping charges, ten years for the aggravated battery and criminal domestic

---

[2] Petitioner concedes that Respondent's recitation of the procedural history of the case is correct and incorporates it by reference into his response [Doc. 56 at 1.] Therefore, the Court has cited to the Respondent's motion for purposes of the background section and incorporates by reference its citations to the record.

violence charges and one year for resisting arrest. [*Id.*] All sentences were to run concurrently. [*Id.*]

**Direct Appeal**

Petitioner filed a timely notice of appeal and was represented on direct appeal by Kathrine Hudgins of the South Carolina Commission on Indigent Defense, who filed an *Anders*[3] brief on Petitioner's behalf in the South Carolina Court of Appeals, raising the following issue:

> The trial judge erred in refusing to require the State to establish a proper foundation and properly authenticate a 911 tape to establish a proper foundation and properly authenticate a 911 tape by admitting the tape through the witness wife instead of the 911 operator.

[*Id.* at 3.]   On September 2, 2009, the South Carolina Court of Appeals issued an unpublished per curiam opinion affirming the trial court's decision.  [*Id.*]  Remittitur was issued on September 18, 2009.  [*Id.*]

**PCR Proceedings**

On September 24, 2009, Petitioner filed a pro se application for post-conviction relief ("PCR").  [*Id*.] Petitioner's application raised the following claims:

    1.    Ineffective Assistance of Trial Counsel:

        a.    Failure to investigate;

        b.    Failure to object to insufficient evidence;

---

[3]A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

> c.    Failure to challenge the prosecutor on probable cause and on admission of evidence.

2.    Violation of due process and equal protection;

3.    Defective warrants and indictments; and

4.    Vindictive prosecution.

[*Id.* at 4.]

An evidentiary hearing concerning the application was held on February 8, 2010, in which Petitioner was represented by Paul Archer.  [*Id.*]  At the hearing, testimony was received from Petitioner and Fox.  [App. 348.]  On March 4, 2010, the PCR court filed an order denying and dismissing the application with prejudice.  [Doc. 49 at 4.] Petitioner appealed the PCR court's decision and was represented by Wanda H. Carter of the South Carolina Office of Appellate Defense, who filed a *Johnson*[4] petition on Petitioner's behalf. The *Johnson* petition raised the issue of

> Did the PCR judge err in refusing to find counsel ineffective for failing to fully explain the benefits of the State's offer to recommend a sentence of ten years in exchange for a guilty plea when counsel was aware of petitioner's diminished mental capabilities?

[*Id.* at 11.]  Petitioner filed a pro se response to the petition, raising three additional issues:

> Was [sic] the Petitioner's Fifth, Sixth and Fourteenth Amendment rights of the United States Constitution and his Rights to Due Process violated by the Double Jeopardy violation?

> Was [sic] the Petitioner's Fifth, Sixth and Fourteenth Amendment Rights violated as well as the Rules of Court and/or Rules of Criminal Procedure by the "procedural defect in the Jury deliberation?

---

[4] A *Johnson* petition is the PCR appeal analogue to an *Anders* brief.  *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

4

> Was [sic] the Petitioner's Fifth, Sixth, and Fourteenth Amendment Rights of the United States Constitution and his Rights of Due Process violated by the defect in the Indictments by the Solicitor's deface [sic] the indictment for Burglary?

[*Id*. at 11–12.] The appeal was transferred to the South Carolina Court of Appeals, which denied certiorari, dismissed the appeal and granted counsel's request to withdraw. [*Id.* at 12.] Remittitur issued on March 11, 2013.  [*Id.*]

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on March 20, 2013, pursuant to 28 U.S.C. § 2254, and amended his Petition with leave of court on September 3, 2013. [Docs. 1, 46.]  Petitioner raises the following grounds for relief, quoted substantially verbatim:

> **Ground One**:        Ineffective assistance of trial counsel
>
> *Supporting Facts*:
>
> > Trial counsel rendered ineffective assistance of counsel for failing to fully explain the benefits of the state's offer to recommend a sentence of ten years in exchange for a guilty plea when counsel was aware of Petitioner's diminished mental capabilities in violation of his Sixth and Fourteenth Amendment rights to effective assistance of counsel and a fair trial.
> >
> > Trial counsel was ineffective for failing to recognize the extent of Petitioner's mental retardation and the unique problems it had on Petitioner's ability to fully understand the charges against him and his ability to assist in and guide his own defense.
> >
> > Trial counsel's lack of pre-trial investigation into Petitioner's mental health problems prevented trial counsel from being able to correctly and adequately, as well as informed, to fully explain said charges and consequences of the criminal charges, and the benefits of the state's plea offer of ten (10) years.  As there existed ample evidence of Petitioner's mental retardation.

5

Trial counsel failed to subpoena and obtain Petitioner's school records from the special needs school he attended in Washington, D.C., and his Supplemental Security Income records from the Social Security Administration; failed to speak with Perry Singletary, Petitioner's brother and a Washington, D.C. police officer at the time – was the payee for Petitioner's SSI; and the fact that Petitioner suffered brain damage at birth, due to umbilical cord wrapped around his neck for several minutes, depriving him of oxygen.

Trial counsel failed to retain a mental health expert to assist him in explaining the charges, consequences, the court system and its function, and the befits of accepting the State's plea offer of ten (10) years.

Trial counsel's deficient performance prejudiced the Petitioner and denied him the benefit of correct advise [sic] as well as informed advise [sic] and deprived the Petitioner of the State's plea offer of ten (10) years.

Therefore, the PCR court erred in refusing to find trial counsel ineffective.

**Ground Two**:  Defense counsel was ineffective, in violation of the  Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution, for failing to object to "Golden Rule" arguments made by the State in both the State's opening statement and closing argument.

*Supporting facts*:

During the State's opening statement, the State asked the jury to place themselves in the shoes of the victim and "envision" the factual scenario the victim experienced.  PCR App. P. 44, lines 8–15.  This line of argument was repeated during the State's closing argument when the State asked the jury to "look at this through the eyes of Michelle Singletary," and continued this line of argument almost through the end of its closing.  PCR App. p. 248, line 14-p. 249, line 9.  Defense counsel made no objection to either of these improper arguments.

**Ground Three**: Defense counsel was ineffective, in violation of the
Petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution, for failing to move to quash the first degree burglary and assault and battery with intent to kill indictments.

*Supporting facts*:

6

On March 30, 2006, the Petitioner was indicted for assault and battery with intent to kill.  On June 29, 2006, the Petitioner was indicted for first degree burglary.  On each of these indictments, Officer Clark with the Horry County Police Department is listed as the only witness for the State.  PCR App. P. 325; p. 328.  At trial, Officer Clark testified that he is the only Officer Clark that works for the Horry County Police Department but that he had no involvement in the presentation of indictments to the grand jury after 2005.  PCR App. p. 124, line 2-p. 126, line 17.  Inasmuch as it is clear that Officer Clark did not testify before the grand jury, and there were no other witnesses presented, the State's attorney must have been the only witness before the grand jury.  This procedure is improper under South Carolina law, and requires quashing of the indictments.  *See State v. Anderson*, 312 S.C. 185, 439 S.E.2d 835 (1993).  Defense counsel, despite eliciting Officer Clark's testimony on the presentation of the indictments, did not move to quash the indictments prior to trial.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner initially brought this action *pro se*, which requires the Court to liberally construe initial Petition.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se petition still may be subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the petitioner's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

7

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355,

8

365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

> ***Generally***

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

9

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has

10

appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)     (I) there is an absence of available State corrective process; or
>>
>>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest

11

court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[5] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson*

---

[5]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the South Carolina Supreme Court is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the South Carolina Supreme Court] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the South Carolina Supreme Court's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

### Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state

13

proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477

14

U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.*

at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.  *Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice.  To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent.  *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent").  Actual innocence is defined as factual innocence, not legal innocence.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

### DISCUSSION[6]

Procedural default is an affirmative defense that is waived if not raised by respondents.  *Gray v. Netherland*, 518 U.S. 152,165–66 (1996).  If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim.  *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).  Petitioner concedes that all three grounds are procedurally barred [Doc. 56 at 7], but argues that such bar should be lifted pursuant to the Supreme Court's decision in *Martinez v. Ryan*, ---U.S.---, 132 S.Ct. 1309 (2012).  Respondent

---

[6] Respondent concedes that Petitioner exhausted his state court remedies and that his Petition is timely. [Doc. 46 at 14–15.]

16

argues Petitioner cannot overcome the default of these grounds because he cannot establish cause and prejudice or a miscarriage of justice, even under *Martinez*.  [Doc. 49 at 17.]

**Ground One**

Ground One is procedurally barred because Petitioner failed to properly raise these grounds for relief to the state courts.  Ground One was raised to the South Carolina Supreme Court in Petitioner's petition for writ of certiorari [Doc. 36-7] but was not raised in his initial PCR application or at his PCR hearing; thus, this claim is procedurally barred from federal habeas review unless Petitioner has demonstrated (1) cause for the procedural default and actual prejudice resulting from the alleged constitutional violation or (2) that a fundamental miscarriage of justice has occurred.[7]  *See Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 496; *Smith*, 477 U.S. at 533.

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule.  *Carrier*, 477 U.S. at 488.  *But see Martinez v. Ryan*, --- U.S. ---, ---, 132 S. Ct. 1309, 1315 (2012) ("Inadequate assistance of counsel at *initial-review* collateral proceedings *may* establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." (emphasis added)).  In this case Petitioner

---

[7] Here, Petitioner does not argue a fundamental miscarriage of justice, but focuses on the cause and prejudice analysis.

contends he can establish cause for the default on Ground One based on the ineffective assistance of his PCR counsel.[8]

In *Martinez*, the Supreme Court elaborated,

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318. Accordingly, Petitioner may establish cause for the default of Ground One if he demonstrates his PCR counsel was ineffective and that the underlying ineffective assistance of trial counsel claim is a substantial one, i.e., it has some merit.

The Court will assume without deciding that PCR counsel was ineffective for failing to raise this issue to the PCR court, particularly in light of the admittedly evident nature of Petitioner's disability. Therefore, the Court proceeds to determine whether the underlying

---

[8] To the extent Petitioner seeks to argue he has established cause in any of his grounds because his PCR appellate counsel was ineffective, ineffective assistance of appellate collateral counsel cannot constitute cause for the default of a petitioner's claim. *See, e.g.*, *Martinez*, 132 S. Ct. at 1320 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings . . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial."); *Freeman v. McCall*, No. 1:12-1105-CMC-SVH, 2012 WL 5511758, at *7 (D.S.C. Oct. 5, 2012) ("[A]ny allegation that PCR appellate counsel was ineffective for not having raised other issues is insufficient to allege cause for procedural default or undue prejudice from an alleged constitutional violation. '[T]he Fourth Circuit has unambiguously held that there is no constitutional right to counsel at the post-conviction relief stage, and, thus, there can be no error which implicates the Sixth Amendment.'" (quoting *Longworth v. Ozmint*, 302 F. Supp. 2d 535, 545 (D.S.C. 2003))), *report and recommendation adopted by* 2012 WL 5511732 (D.S.C. Nov. 14, 2012).

ineffective assistance of counsel claim has merit.  In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. 668, 687 (1984).  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

A criminal defendant has a constitutional right to effective assistance of counsel, which also extends to plea negotiations and proceedings.  *Missouri v. Frye*, --- U.S. ---, ---, 132 S. Ct. 1399, 1407–08 (2012); *Lafler v. Cooper*, --- U.S. ---, ---, 132 S. Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, ---, 130 S. Ct. 1473, 1480–81 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *see also McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) ("Since *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed.2d 799 (1963), it has been clear that a defendant pleading guilty to a felony charge has a federal right to the assistance of counsel.  It has long been recognized that the right to counsel is the right to the effective assistance of counsel." (internal citations omitted)).  In *Hill*, the Supreme Court held "that the two-part *Strickland v. Washington* test applies to challenges to guilty

pleas based on ineffective assistance of counsel," with the modification that, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  474 U.S. at 58–59.

Recently, the Supreme Court recognized that a defendant may establish an ineffective assistance claim if the defendant, relying on erroneous advice from his counsel, rejected a plea offer, proceeded to trial, and was convicted of a more serious crime than he would have pled guilty to or received a harsher sentence than was recommended under the terms of the plea offer.  *See Cooper*, 132 S. Ct. at 1383–85.  To establish prejudice, the second prong of the *Strickland* test, in such a case, the Court held

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385.

Here, Petitioner asserts trial counsel was ineffective "in his presentation of the State's plea offer to the Petitioner, and, in particular, in failing to have an expert accompany him when he conveyed the plea offer to the Petitioner." [Doc. 56 at 14.] Petitioner argues that he has difficulty understanding mathematical concepts, such as the length of time of a prison sentence and therefore was unable to understand the plea deal without expert assistance, which his trial counsel should have understood. [*Id.*] The Court disagrees that the underlying ineffective assistance claim has any merit because it cannot

20

determine that counsel's conduct fell beneath an objective standard of reasonableness.

While the issue was not before the PCR court, the court did hear testimony from Fox on the plea deal.  Fox testified that he discussed the 10 year plea deal with Petitioner and that "[Petitioner] was not willing and did not waiver in his position that he did not do anything and that he would not accept a sentence for anything.   He would not plead." [App. 365.][9] In discussing Petitioner's competency, Fox testified that he had Petitioner evaluated by Dr. Donna Culley from the South Carolina Department of Disabilities, and she found Petitioner to be provisionally mentally retarded but competent to stand trial. [App. 371.] Specifically, Dr. Culley stated "[w]ith respect to competency, it is the opinion of the examiners that [Petitioner] has the capacity to demonstrate a factual and a rational understanding of the legal process, the charges against him, and the possible penalties if convicted.  Likewise, it is the examiners' opinion that he *has the ability to effectively communicate with his attorney in developing a defense*." [Doc. 56-1 at 8 (emphasis added).]

Fox averred that he had no basis for disputing Dr. Culley's finding and that "[i]n my own involvement with [Petitioner] was that if you took time and explained and talked to him that he, that he could understand, that you had to continually do that.  You had to say – you had to, you know, if you saw him one week you might have to go over it again the next week, but that he could be informed and educated about his rights." [App. 371.] In addition to Dr. Culley's competency evaluation, counsel requested a *Blair* competency hearing before the trial court judge. [App. 372.] During that hearing, the trial court also found

---

[9] The Appendix is located at Docs. 36-1, 36-2, and 36-3.

Petitioner to be competent to stand trial. [*Id*.] Finally, Petitioner coherently testified at trial about the incidents in question. [App. 149–96.]

Upon this evidence, which Petitioner does not dispute, the Court cannot find that trial counsel's conduct was ineffective or fell below the objective standard of reasonableness. Counsel appeared to zealously advocate for his client, and requested two separate evaluations of Petitioner [See Doc. 56-1] in addition to the competency hearing before the trial court. The report of Dr. Culley demonstrates that she specifically found Petitioner could communicate effectively with his attorney. Fox testified that he walked Petitioner through the plea deal, that Petitioner understood it, and that Petitioner was adamant about not taking a deal. Therefore, the Court does not find that Petitioner has shown trial counsel was ineffective and, therefore, *Martinez* does not excuse the procedural bar to Ground One.[10]

**Ground Two**

Ground Two is also procedurally barred, because Petitioner did not raise it in his direct appeal, at his PCR hearing or on appeal from the PCR court's denial of his application. Petitioner again argues that his default should be excused pursuant to *Martinez*. Therefore, the Court's initial inquiry is whether PCR counsel was ineffective and whether the underlying ineffective assistance of counsel claim has some merit. In Ground Two, Petitioner argues his trial counsel was ineffective for failing to object to the Solicitor's impermissible "Golden Rule" arguments in the Solicitor's closing statement.

---

[10] The Court notes that even if Petitioner's claim were saved under *Martinez*, the same *Strickland* analysis would apply in considering the claim on the merits, and such claim would fail.

"In a Golden Rule argument, jurors are urged to place themselves in the position of a party, a victim, or a victim's family member and decide the case from that perspective." *Brown v. Cartledge*, C.A. 9:09-2254-JFA-B, 2010 WL 2733858, at *6 (D.S.C. June 10, 2010) *report and recommendation adopted,* C.A. 9:09-2254-JFA, 2010 WL 2730882 (D.S.C. July 9, 2010) (quoting *Gilchrist v. Hagan,* No. 06–1236, 2007 WL 951749 at *29 (D.S.C. Mar.27, 2007) (citing *Von Dohlen v. State,* 360 S.C. 598, 602 S.E.2d 738, 743–744 (S.C.2004))). "However, [t]he law is clear that although it is improper to ask jurors to place themselves in the position of a party, such a 'golden rule' argument does not constitute reversible error if no prejudice arise[s] from counsel's comment." *Id.* (quoting *Ladantae v. Koppel*, C.A. No. 07-2176, 2010 WL 2025586, at *13 (D.Md. May 19, 2010)).

During his opening and closing arguments, the Solicitor made several statements that arguably violated the Golden Rule:

> Now here is – I want you to envision this. You are standing inside this house; you are hearing outside the house as Sam rips open that screen door, tears it from its locks, and with one kick, knocks that wooden door back in. Michelle runs to the back of the apartment. When you lock yourself into a place, and somebody breaks that first barrier, well, you are in a mess, because you've got to unlock the back door to get out.

[App. 44.]

> If you look at this through the eyes of Michelle Singletary – I'm not saying not to look at it through the Defendant's eyes – I want you to think about it on both sides, but there is truly right and wrong in this case. It's not a gray area. You cannot bust in a door, invade somebody's home, run in there and stab at somebody with a knife and say, well, we are somewhere in the middle. That is wrong. You cannot do that. By doing that you have committed burglary. By doing that – by stabbing a knife toward somebody you have committed assault and battery with intent to kill, especially when you admit, and you say, I formed the intent; I told you I was going to kill you, you have committed criminal domestic violence high and aggravated nature. When you take that person, at knife point, from one area of the County, and drive them twenty minutes to another that is kidnaping. When you

23

> disrobe, and tell someone else to disrobe, and you have refused to put down a weapon, you've brought that weapon in to accomplish that, that is assault with intent to commit C.S.C.  When you form an intent to pull a knife on an officer you have formed the intent to assault that officer.

[App. 248–49.] Trial counsel did not object to these statements.

To overcome the default, Petitioner must demonstrate that PCR counsel was ineffective for failing to raise the issue at the PCR court and that the underlying ineffective assistance claim is substantial.  The Court will assume without deciding that PCR counsel was ineffective for failing to raise this issue and proceed to consider whether the underlying ineffective assistance claim has any merit.  As noted, in *Strickland,* the United States Supreme Court held that to overturn a Petitioner must show that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. at 687.

The Court does not find that Petitioner can show that his underlying ineffective assistance of counsel claim is substantial because Petitioner has failed to demonstrate any prejudice resulting from the Solicitor's inappropriate comments.  The Court does agree that the comments were inappropriate and his trial counsel should have objected.  However, while Petitioner argues that the evidence against him was not overwhelming, "as evidenced by the jury's verdicts of acquittal on several of the Petitioner's charges" and that "[h]ad the State not explicitly argued to the jury, on multiple occasions, to look at the case through the eyes of the victim and to recreate the experience of the burglary, assault, and kidnapping, it is highly likely that the jury would have acquitted the Petitioner of all charges" [Doc. 56 at 21], the record does not support this argument.  Having reviewed the record of the trial, the Court cannot agree with Petitioner's mere speculation that there is a reasonable probability he would have been acquitted but for these remarks.  First, the Solicitor's

remarks, while improper, were limited in scope and duration–several sentences over the period of a three day trial. Second, the evidence of Petitioner's guilt was overwhelming. The primary piece of evidence, which was played for the jury, was a 911 tape that captured the entire incident. [App. 65.] Moreover, Michelle Singletary, the victim and the Petitioner's ex-wife, testified at trial about what she experienced and identified Petitioner as the perpetrator. [App. 53–96.]   Both Petitioner and the victim testified, allowing the jury the opportunity to weigh their respective stories and credibilities.    Petitioner admitted on the stand that he took a knife with him when he went to see Ms. Singletary. [App. 160.] While he testified that Ms. Singletary came with him willingly [App. 157], she testified that he kicked in the door after she refused him entry to the house, threatened to kill her, cut her hand with his knife and forced her at knife point to get into the car with him. [App. 56-62.] In light of this evidence, as well as appropriate jury instructions given by the trial judge as to each party's requisite burden of proof, the Court cannot determine that there is a reasonable probability that the outcome of the case would have been different but for the Solicitor's Golden Rule remarks.  Therefore, Petitioner has failed to demonstrate that his underlying ineffective assistance claim is substantial, and therefore his procedural default is not excused under *Martinez*.[11]

### Ground Three

The Court need not consider whether the procedural default in Ground Three should be excused because Ground Three is not appropriate for federal habeas review. "[F]ederal

---

[11] As in Ground One, the Court notes that even if Petitioner's claim were saved under *Martinez*, the same *Strickland* analysis would apply in considering the claim on the merits, and such claim would fail.

habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  "[I]t is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented," *Grundler v. State of N.C.*, 283 F.2d 798, 802 (4th Cir. 1960); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.*  (citations omitted)).

In *Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998) , the petitioner raised a jurisdictional claim in his habeas petition, arguing that the state lacked jurisdiction over two of the counts against him because the proper procedure was not followed in transferring the counts from juvenile to circuit court. *Id.* "Because [petitioner's] claim, when pared down to its core, rests solely upon an interpretation of [state] case law and statutes, it is simply not cognizable on federal habeas review. *Id.* (citing *Smith v. Moore*, 137 F.3d 808, 822 (4th Cir. 1998)).  The same analysis applies here.  Ground Three of the petition raises a argument that proper state procedure was not followed in indicting Petitioner.  This claim is a purely state law claim, just as in *Wright.*  There is no allegation of a due process violation because Petitioner did not have sufficient notice of the charges against him. Therefore, there is no federal habeas claim and summary judgment is appropriate on Ground Three.

**Motion to Expand the Record**

Petitioner has moved to expand the record pursuant to Rules 7 and 8 of the Rules Governing Section 2254 Cases to include the additional evidence Petitioner contends PCR counsel should have presented to the PCR court to show the ineffectiveness of both trial and PCR counsel.  [Doc. 58.] The Petitioner contends that 28 U.S.C. §2254(e)(2)[12] should be inapplicable to *Martinez* claims.  Petitioner submits that §2254(e)(2)'s prohibition against holding evidentiary hearings where habeas petitioners "failed to develop the factual basis of a claim in state court" should not be applied where collateral counsel was the reason for that failure.    Rule 7 of the Rules Governing Section 2254 Cases provides, "If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition," where the additional materials may include documents and exhibits.  Under Rule 8 of the Rules Governing Section 2254 Cases, "If the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."  As previously noted, the text of § 2254 restricts when

---

[12]Section 2254(e)(2) reads as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > (A) the claim relies on—
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

27

a court may hold an evidentiary hearing and accept additional evidence.  28 U.S.C. § 2254(e)(2); *see Fielder*, 2013 WL 593657, at *3 ("Section 2254(e)(2) limits a petitioner's ability to present new evidence through a Rule 7 motion to expand the record to the same extent that it limits the availability of an evidentiary hearing." (citing *Runningeagle v. Schriro*, No. CV-98-1903-PHX-PGR, 2007 WL 4200743, at *26 (D. Ariz. Nov. 27, 2007))); *see also Holland*, 542 U.S. at 653 ("[The conditions prescribed by § 2254(e)(2)] apply *a fortiori* when a prisoner seeks relief based on new evidence without an evidentiary hearing.").  "However, courts have held that § 2254(e)(2) does not similarly constrain the court's discretion to expand the record to establish cause and prejudice to excuse a petitioner's procedural defaults." *Fielder*, 2013 WL 593657, at *3 (citing *Cristin v. Brennan*, 281 F.3d 404, 416 (3d Cir. 2002)).  Thus, a court retains discretion to expand the record for purposes of determining whether to excuse a petitioner's procedural default, but § 2254(e)(2) dictates whether a court may expand the record for purposes of establishing the factual predicate of a ground for relief.  *See, e.g.*, *Buckman v. Hall*, No. CV 07-141-HU, 2009 WL 204403, at *1 (D. Or. Jan. 23, 2009).

Here, Petitioner seeks to introduce evidence that was not before the state courts for both purposes: (1) to establish his PCR counsel was ineffective and overcome the procedural bars, and (2) to establish the factual predicate of his claim for federal habeas relief—ineffective assistance of defense counsel.  Here, the Court has assumed without deciding that PCR counsel was ineffective, so additional evidence is not needed for that purpose.  Petitioner also has not sufficiently specified how such new evidence would impact this Court's cause and prejudice analysis.  The question before this Court is not

28

whether or not Petitioner was competent, but whether or not his counsel was ineffective. The additional evidence hypothetically discussed would not add to the evidence already in the record on this issue.

As to whether the additional evidence is admissible for the purpose of supporting Petitioner's ground for federal habeas relief, Petitioner has failed to meet the requirements of § 2254(e)(2). Specifically, Petitioner has failed to demonstrate "the facts underlying [his] claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [Petitioner] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). Instead, Petitioner has argued that the additional evidence shows he would have taken a guilty plea, which does not establish by clear and convincing evidence that, if he had proceeded to trial, no reasonable factfinder would have found Petitioner guilty of the underlying offenses. Accordingly, the Court recommends Petitioner's motion to expand the record be denied and that Respondent's motion for summary judgment be granted on the basis of the state court record, as discussed above.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED. Additionally, the Court recommends that the motion to expand the record be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 7, 2014
Greenville, South Carolina

29